## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### Honorable Howard R. Tallman

| | |
|---|---|
| In re: | ) |
| | ) |
| KIMIE LOEFFLER, | )    Case No. 10-39898 HRT |
| | ) |
| Debtor. | )    Chapter 13 |
| | ) |

### ORDER ON CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

This matter comes before the Court for a hearing on confirmation of *Second Amended Chapter 13 Plan* (docket #66) (the "Plan") and on the *Objection to Second Amended Chapter 13 Plan* (docket #71) (the "Objection") filed by Wells Fargo Equipment Finance, Inc. ("Wells Fargo").

Wells Fargo objects on two grounds: failure to satisfy the best interests of creditors test under 11 U.S.C. § 1325(a)(4) and lack of good faith under 11 U.S.C. § 1325(a)(3).

### I. FACTUAL BACKGROUND

Prior to April 1, 2007, Debtor was the 100% owner of Japan Food Concepts, Inc. ("JFC"), an entity that owned and operated the Kobe An restaurant. On or around April 1, 2007, Debtor transferred her stock in JFC to her daughter Michelle Trujillo. Consideration for the transfer was $300,000.00 payable without interest at the rate of $4,000.00 per month until fully paid.[1]

The "sale" transaction was not professionally documented and the parties did not seek professional assistance to value the business. The Debtor's accountant characterized the payments that the Debtor received as in the nature of retirement payments to a retiring owner. He encouraged the Debtor document the transaction in that manner but that was never done.

Prior to the sale, in approximately 2004, Debtor took up residence in Panama with her then boyfriend Thurston Beadle. At the time, Debtor had resources that she believed to be adequate to live on in retirement. She was also receiving payments from the Kobe An restaurant as the owner of JFC. Mr. Beadle had no resources and no income. In addition to normal living expenses, Debtor was paying expenses on Mr. Beadle's behalf such as back child support and educational expenses for Mr. Beadle's children. Debtor and Mr. Beadle used Debtor's funds to make investments in Panamanian real estate. Her remaining resources were largely exhausted on living expenses and paying expenses for Mr. Beadle. Debtor obtained no interest in any of the

---

[1] The record also contains a Bill of Sale dated January 1, 2006, purporting to sell Debtor's stock in JFC to Michelle Trujillo. However, that Bill of Sale is not signed by Trujillo and the Court disregards it.

ORDER ON CONFIRMATION OF
DEBTOR'S CHAPTER 13 PLAN
Case No. 10-39898 HRT

real estate investments and returned to Colorado in 2010 without Mr. Beadle but substantially stripped her assets.

On April 15, 2007, Wells Fargo obtained a judgment against the Debtor in the original amount of $174,763.29. The judgment constitutes a lien on Debtor's real property in Jefferson County, Colorado. As of the filing date the judgment was unpaid with a balance of $210,140.62.

The real property against which Wells Fargo's lien attached is the Debtor's residence. Her original intention was to pay a mortgage arrearage in her plan and retain the property. That raised a valuation issue with respect to the real estate and whether value existed in the real estate over and above prior liens to which the Wells Fargo judgment might attach. That valuation issue was rendered moot by the Debtor's later decision to surrender the real estate. Thus, it appears that Wells Fargo is a largely – if not fully – unsecured creditor.

Just prior to the petition date, it appears that possibly as much as $150,000.00 remained owing to the Debtor with respect to the sale of JFC. On the eve of the bankruptcy filing, the Debtor, JFC, and Trujillo signed an Amendment to Stock Sale Agreement Regarding Japan Foods Concepts, Inc. (the "Amendment"). The Amendment was entered into in November, 2010 – just prior to the petition date – but the Amendment states that it is entered into and effective on February 1, 2010. The Amendment makes vague references to JFC's financial difficulties and it forgives the remaining debt to the Debtor. In return, JFC employs the Debtor as a manager at the rate of $3,000.00 per month.

## II. DISCUSSION

### A. U.S.C. § 1325(a)(4); Best Interest of Creditors

Wells Fargo's argument with respect to the § 1325(a)(4)'s best interest of creditors test is that the Debtor has failed to fully account for the estate's $150,000.00 fraudulent conveyance action and to provide payment of that amount to creditors under her plan.

Under § 1325(a)(4), the Debtor's Plan may not be confirmed unless

the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date . . . .

Strictly for the purpose of examining Wells Fargo's contention, the Court will assume – without deciding – that the Debtor's bankruptcy estate does possesses a fraudulent conveyance action for recovery of $150,000.00. In the Debtor's Plan Section II.B. Reconciliation with Chapter 7, she assigns a value of $128,000.00 to that cause of action, discounting the value in

ORDER ON CONFIRMATION OF
DEBTOR'S CHAPTER 13 PLAN
Case No. 10-39898 HRT

recognition of the litigation and collection risks. The Reconciliation also reflects a $44,931.00 chapter 7 administrative expenses. The administrative expense is unexplained but the Court takes that to be made up largely of the litigation expense of pursuing the action to recover the fraudulent conveyance plus the applicable trustee's commission. Under the Debtor's Reconciliation, when the value of other non-exempt assets is taken into account, the Debtor estimates that unsecured creditors in a case filed under chapter 7 would share a distribution of $120,725.00. The Debtor's Plan is calculated to equal that distribution to unsecured creditors.

The Court agrees with Wells Fargo to the extent that, in order to satisfy the requirements of the best interests test, the Debtor's plan must provide that any net recovery on the fraudulent conveyance action must be distributed to creditors. But satisfaction of the best interests test does not require the Debtor herself to personally fund distribution to creditors of the hypothetical value of any such recovery. With limited exceptions, a debtor in a chapter 13 case, unlike a debtor-in-possession in chapter 11, exercises no control over avoidance actions of the kind described in §§ 544, 547 and 548.[2] It is the chapter 13 trustee who must pursue those recoveries. In order to satisfy the requirements of § 1325(a)(4), the Debtor's plan need do no more than provide that the net proceeds of any such recovery shall be paid out to creditors.

There is a split of authority on the question of whether a chapter 13 debtor has the authority under the Bankruptcy Code to pursue recoveries under §§ 544, 547 and 548 for the benefit of the bankruptcy estate.[3] However, § 1303 enumerates specific powers that a chapter 13 debtor may exercise, exclusive of the chapter 13 trustee. The exercise of the power to recover money and property under §§ 544, 547 and 548 is absent from that list. In contrast, §§ 1107 and 1203 plainly do grant those powers to debtors in chapter 11 and chapter 12 cases. Congress specifically enumerated the powers of debtors in the three common reorganization chapters. It specifically granted avoidance and recovery powers under §§ 544, 547 and 548 to chapter 11 and chapter 12 debtors but it did not do so for chapter 13 debtors. The Court cannot interpret that absence of authority in § 1303 as a mere oversight by Congress and cannot find those omitted powers to be possessed by chapter 13 debtors by implication. In §§ 1107 and 1203, Congress showed that it knew precisely how to make explicit a debtor's authority to pursue actions under §§ 544, 547 and 548. The most reasonable interpretation of the absence of that authority in § 1303 is that Congress did not intend it. *Hansen v. Hansen (In re Hansen)*, 332 B.R. 8, 16 (B.A.P. 10th Cir. 2005) ("We . . . hold that Chapter 13 debtors lack statutory standing to exercise the trustee's avoidance powers under § 544."); *Montoya v. Boyd (In re Montoya)*, 285 B.R. 490, 492-93 (Bankr. D. N.M. 2002) ("Congress was very specific in describing the powers of Chapter

---

[2] A debtor may pursue an avoidance action where the trustee declines to pursue the action and the debtor could have claimed the property as exempt under § 522(g)(1). 11 U.S.C. § 522(h).

[3] *See* COLLIER ON BANKRUPTCY ¶544.07, ¶547.11 & ¶548.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) and the cases cited therein.

13 debtors in section 1303. The power to prosecute claims belonging to the estate is not one entrusted to the debtor . . . ."); *Lucero v. Green Tree Fin. Servicing Corp. (In re Lucero)*, 199 B.R. 742, 745 (Bankr. D. N.M. 1996) ("The better-reasoned cases . . . hold that if Congress had intended to grant avoidance powers to a Chapter 13 debtor, it could have explicitly done so.") *rev'd on other grounds* 203 B.R. 322 (B.A.P. 10th Cir. 1996).

There is a distinction between causes of action belonging to a debtor prior to the petition date – actions to collect accounts receivable for example – and trustee avoidance actions. An avoidance action under the Bankruptcy Code only arises upon the filing of a bankruptcy case. To the extent that a recovery action has any value, it is value created by the filing of the bankruptcy case. An insolvent individual, outside of bankruptcy, cannot pursue a fraudulent conveyance action to recover property that he conveyed. Certainly such an individual cannot sue to recover a preference or exercise § 544 strong-arm powers. Under § 541(a)(3) property that is the subject of a trustee recovery under §§ 544, 547 or 548 only becomes property of the estate *if and when* the trustee recovers it. Simply put, no matter how compelling the case appears, a transfer is not a fraudulent conveyance until it is adjudicated as such. Proceeds of such avoidance actions do not become estate property until actually recovered by the trustee. *In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992), *but see In re Mortgage-America Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983) (holding that a debtor retains an equitable interest in property subject to a fraudulent conveyance action and that equitable interest becomes "property of the estate" under § 541(a)(1)).

The Court cannot apply the best interests test under § 1325(a)(4) in such a way as to require the Debtor to personally fund the distribution of assets that she does not possess and cannot personally recover. Avoidance actions are typically causes of action concerning money paid to a creditor that constitutes a preference; an avoidable lien granted to a creditor within 90 days of the petition date; or real or personal property transferred prior to the petition date in a transaction that is either constructively or actually fraudulent. In this case the allegation concerns a right to payment of money that the Debtor relinquished prior to the petition date. As is typical of many avoidance actions, it involves property the Debtor does not possess.[4] The Court cannot require the Debtor to personally fund payment of the hypothetical value of an asset that the Debtor does not possess and that the Code gives her no authority to recover. By its very nature, an avoidance action to recover money from a third party is unlike property that vests in the debtor

---

[4] One common variety of avoidance action does concern property in a debtor's possession. In some cases a lien may be avoided on property in a debtor's possession. The avoidance of such a lien has the effect of increasing non-exempt equity that the debtor must distribute to creditors under his plan if he intends to retain possession of the property. In cases of that type, the debtor must fund the payout of that non-exempt equity through his plan and it may be necessary for the court to place a value on the property to make an analysis of the best interests test. But cases like this one, where the Debtor has no control over the cause of action or the property the trustee seeks to recover, present a different case.

ORDER ON CONFIRMATION OF
DEBTOR'S CHAPTER 13 PLAN
Case No. 10-39898 HRT

upon plan confirmation, the value of which the debtor pays to creditors under his plan.  Except for
actions to avoid the transfer of exempt property under § 522(h), avoidance actions are not under
the control of the debtor.  It is the trustee who chooses to pursue an avoidance action.

That does not mean that a creditor in a chapter 13 proceeding should not expect to receive
a distribution on account of assets that may be subject to recovery under §§ 544, 547 or 548.  But,
because a chapter 13 debtor has no control over such recovery actions, the creditor must look to
the chapter 13 trustee to recover and distribute those assets exactly as it must look to the trustee to
pursue those recovery actions in a chapter 7 case.[5]  So long as the Debtor's plan provides for that
eventuality and provides that any such recovery must be distributed to creditors under a the Plan,
it passes muster under § 1325(a)(4).  *See, e.g., In re Johnson*, 26 B.R. 381, 383 (Bankr. D. Colo.
1982) ("Since the Chapter 13 trustee has the power to avoid the transfer . . . under 11 U.S.C. §
548, a plan providing for such event would satisfy the best interests test of Section 1325(a)(4).").

The majority of reported cases conduct a more searching analysis than this Court is
willing to undertake.  For example, the court in *In re Larson*, 245 B.R. 609 (Bankr. D. Minn.
2000), assessed the likelihood of a recovery on the asserted fraudulent conveyance action;
estimated the amount of that recovery; and determined that the debtor's plan could not be
confirmed because it provided for less payment to unsecured creditors than they would receive in
a chapter 7 liquidation.  *Id.* at 614-16.  The Court must part company with those courts over the
necessity of conducting such an inquiry at the confirmation stage.

In the absence of a necessity to estimate a possible recovery, the Court finds such a
procedure presents more problems than it solves.  As a rule, it should rarely be necessary to
engage in a mini-trial to determine the likely outcome of an avoidance action in order to assess
compliance with § 1325(a)(4).  There is no necessity of going through that exercise when a plan
may simply provide that whatever net recovery a trustee achieves will be paid over to creditors.
Holding a mini-trial on the avoidance action in connection with a plan confirmation and then
holding an actual avoidance trial is duplicative and wasteful of Court resources.  Moreover, there
is no guarantee that the conclusions that the Court draws after listening to an abbreviated version
of the evidence at the confirmation hearing will be the same as it will reach after a full vetting of
the evidence in an adversary proceeding.

B.  11 U.S.C. § 1325(a)(3); Good Faith

---

[5] Some cases hold that a court may grant a creditor "derivative standing" to pursue an
avoidance action that a trustee declines to pursue.  *See, e.g., Hyundai Translead, Inc. v. Jackson
Truck and Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231 (6th Cir. 2009).  But that
is not an issue that is before this Court.

ORDER ON CONFIRMATION OF
DEBTOR'S CHAPTER 13 PLAN
Case No. 10-39898 HRT

The good faith issue is much more problematic for the Debtor.  Section 1325(a)(3) prohibits a bankruptcy court from confirming a chapter 13 plan unless "the plan has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1325(a)(3).  "The Bankruptcy Code requires that a debtor file necessary declarations adequately, honestly, and in good faith."  *In re Kane*, 628 F.3d 631, 636 (3rd Cir. 2010) (citing 11 U.S.C. § 521(a)(1); FED. R. BANKR. P. 9011(b)).  "Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets."  *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2nd Cir. 2008).

Prior to November, 2010, the Debtor possessed a fixed right to monthly payments from Michelle Trujillo or JFC[6] in the amount of $4,000.00 with approximately $150,000.00 remaining on the obligation.[7]  On the eve of her bankruptcy filing, Debtor relinquished that right to payment.

The timing of the transfer is highly suggestive that it was done in contemplation of the filing of the bankruptcy case and any eve of bankruptcy transfer of assets is strongly suggestive of a debtor's bad faith.  That the Amendment reflects it was entered into and effective some ten months prior to the date that the document was actually executed is suggestive of a motive to obscure the transaction.  Moreover, not only was this an eleventh hour backdated transaction it is a transaction that Debtor wholly failed to disclose in her bankruptcy schedules.

But the record also reflects the following statement Debtor's counsel made during opening argument:

> At the time Debtor came to consult with counsel regarding the bankruptcy, it was counsel's suggestion that the stock purchase agreement be amended to be converted into an employment agreement to better reflect the then posture of the parties; that in fact Ms. Loeffler was working as an employee as opposed to being a consultant or simply receiving funds.  In fact, if she had been involved in a workers compensation type of injury at the restaurant she would have had a claim. It was viewed that she needed to be withholding payroll taxes and therefore an amendment to the stock sale agreement took place.  It was dated as of February of 2010 but was actually prepared prior to the petition in November.

---

[6] The documents are not clear on who is liable for the payments to the Debtor.  But that is not part of the issue that is before the Court and the Court specifically declines to make that determination.

[7] The Court has no evidence on the real value of that right to payment based on its collectability.

ORDER ON CONFIRMATION OF
DEBTOR'S CHAPTER 13 PLAN
Case No. 10-39898 HRT

Counsel's statement in open court corroborates the Debtor's testimony that she had fully informed her counsel concerning the circumstances surrounding the earlier sale of the restaurant. It goes a good deal farther. Not only was counsel informed of the earlier sale transaction, it was counsel – not the Debtor – who engineered the scheme to convert the sale transaction into an employment agreement.

In the normal course of a bankruptcy client consulting with counsel, the client will frequently complete a worksheet and/or be interviewed by counsel or a staff member to gather information for completion of bankruptcy schedules. Counsel or a staff member will then draft the schedules to be reviewed by the client.

Here, counsel's awareness of the circumstances of the sale transaction and subsequent conversion to an employment agreement went far beyond that customary scenario. Counsel was intimately involved in the very transaction that is a primary focus of Wells Fargo's objection to Debtor's Plan. Yet, the schedules that same counsel prepared omitted mention of the transaction entirely.

The circumstances of this case are unique in the Court's experience. The Debtor did review her bankruptcy schedules and did sign those schedules under oath. In the typical case, that would often be enough to hold the Debtor fully accountable for inaccuracies and lapses of disclosure. But here the Court cannot find that the Debtor possessed the intention to mislead the Court or creditors necessary to support a finding of bad faith.

The Court bases its conclusion, in part, on Debtor's patent lack of sophistication in the documentation of the original sale agreement. The documents before the Court demonstrate a lack of familiarity and sophistication with respect to common business transactions. The sale of the Debtor's stock interest in JFC for $300,000.00 is evidenced by a five sentence Bill of Sale and nothing more. From the evidence at trial, it is clear that neither party gave much thought to what the actual value of the Debtor's stock in JFC might be. When read in conjunction with the Restaurant Consulting Contract, apparently executed on the same date, April 1, 2007, it is not at all clear whether the parties intended payment to come from Trujillo personally or from JFC, or whether the parties intended Trujillo to purchase the stock and JFC to enter into a wholly separate consulting agreement. To call this sale a "back of the napkin" affair, as counsel did during opening statements, is charitable.

In view of that lack of sophistication, the evidence does not persuade the Court that the Debtor possessed an appreciation that the conversion of the sale agreement to an employment agreement constituted the transfer of an asset. From a legal perspective, the relinquishment of a right to a stream of payments is every bit as much of a transfer of an asset as signing over the deed to a piece of real property. But the Court cannot assess the Debtor's good faith solely on the basis of the legal effect of the transaction. The Court must make a judgment with respect to the Debtor's intention. The evidence is that the Debtor was fully forthcoming with her counsel

ORDER ON CONFIRMATION OF
DEBTOR'S CHAPTER 13 PLAN
Case No. 10-39898 HRT

concerning the details of the earlier sale of JFC to Trujillo and that she followed counsel's advice with respect to conversion of the sale agreement to an employment agreement. Those are not facts that support a finding of bad faith for failure to disclose.

The Court cannot find the requisite intention to mislead from the fact that Debtor reviewed her schedules and failed to bring to counsel's attention that the agreement to convert the sale agreement to an employment agreement is not listed under Question #10 on the Statement of Financial Affairs ("SOFA"). That question asked the Debtor to "[l]ist all other property . . . transferred . . . within two years immediately preceding the commencement of this case." The Court must view the circumstances from the perspective of the Debtor. It should have been obvious to Debtor's attorneys that the conversion of the sale transaction into an employment agreement effected the transfer of a property interest but the Court is not persuaded that an individual who is unsophisticated in business transactions, as the evidence before the Court demonstrates the Debtor is, should be found to have acted in bad faith on the basis that, upon her review of her bankruptcy schedules, she failed to recognize that the conversion of the sale agreement into an employment agreement is the type of property transfer that must be listed under Question #10 of the SOFA. That is especially true where the same counsel who drafted the schedules is the counsel who engineered the omitted transaction in the first place.

C.  The Stock Sale Agreement

Wells Fargo does not only complain of the transaction to convert the stock sale transaction to an employment agreement. It also characterizes the original stock sale agreement as a fraudulent transfer. In 2007 Debtor sold her interest in JFC to Trujillo. At the time of the transfer Debtor was indebted to Wells Fargo and Wells Fargo subsequently obtained its judgment against the Debtor. To the extent that the facts surrounding that sale in 2007 allow recovery on a fraudulent conveyance theory, the same analysis as above holds with respect to Debtor's compliance with the § 1325(a)(4) best efforts test. The test is satisfied by disclosing the possibility of the cause of action and providing that the trustee shall distribute any net recovery to creditors.

With respect to bad faith, because of the remoteness of that transaction from the filing of the Debtor's bankruptcy petition, the Court finds that the transaction does not provided any basis for denying confirmation of the Debtor's Plan on the basis of bad faith.

III.  CONCLUSION

The Court will deny confirmation of Debtor's plan because it fails to adequately deal with whatever avoidance action the estate may possess with respect to the original sale of the business and the later conversion of the stock purchase agreement into an employment agreement. Debtor's plan does not provide for the eventuality of an action to recover a fraudulent conveyance. Whether or not to pursue such an action is a matter left to the sound discretion of the

ORDER ON CONFIRMATION OF
DEBTOR'S CHAPTER 13 PLAN
Case No. 10-39898 HRT

trustee.  The Debtor may not limit that discretion by a provision of her plan but, by the same token, she need not promise a payout over which she exerts no control.  She must, however, in addition to proposed payments from Debtor's disposable income under the Plan, include a provision in her plan that insures any such recovery is distributed to creditors under her plan.

Nothing in this Order should be construed to prevent or discourage the interested parties from entering into a negotiated settlement of the underlying fraudulent conveyance action.  However, the parties in interest with respect to an avoidance action are the Chapter 13 Trustee and the recipient of the allegedly avoidable transfer.  Such settlements are subject to Court approval under FED. R. BANKR. P. 9019 after notice and hearing.

In accordance with the above discussion, it is

**ORDERED** that confirmation of Debtor's Chapter 13 Plan (docket #66) is DENIED.  It is further

**ORDERED** that the Debtor shall file an amended plan in accordance with this Order no later than **January 13, 2012**, together with a Notice conforming to L.B.F. 3015-1.7.  The Plan and Notice shall be mailed to the Chapter 13 Trustee and all parties in interest.  The Notice shall establish the deadline of **February 10, 2012**, for the filing of objections to confirmation.  Debtor shall file the appropriate Verification of Confirmable Plan or Certificate and Motion to Determine Notice in accordance with L.B.R. 3015-1 by **February 17, 2012**.

Dated this ___21st___ day of December, 2011.

**BY THE COURT:**

_Howard Tallman_

Howard R. Tallman, Chief Judge
United States Bankruptcy Court

Page 9 of 9